Good morning. May it please the court, Joe Siguenza for petitioner. There are two issues for the court's consideration in this case. The first issue is whether the IJ erred in finding that petitioner was statutorily ineligible for asylum because of an untimely filing. And the secondary issue is whether this court has jurisdiction under the Real ID Act to assess credibility and determination to support it by substantial evidence. With respect to the first issue, under the Ramadan precedent, this court does have judicial review jurisdiction over what petitioner submits is a mixed question of law and fact. At the hearing, the respondent briefly testified about why there was such a delay between his date of lawful entry to the United States and his filing of his asylum application admittedly over a year after his entry. And the brief testimony that respondent provided, which was not further inquired into by either of the parties, was that he had entered into a lawful marriage and an I-130 petition was filed, denied by the appropriate agency. And then subsequent to that denial, there was a child born in the relationship and a second I-130 was filed. The respondent testified that he was not aware of the outcome of the second petition. The IJ briefly discounted his testimony and stated that there was no evidence presented by the respondent to excuse the untimely filing. We would submit that admittedly there was very brief testimony and perhaps there should have been more testimony elicited from the respondent about the circumstances regarding the untimely filing. In any event, if respondent was permitted to further testify, petitioner would submit that the extraordinary circumstances under the regulations that permit untimely filing in this situation would be So your argument is that what gets him out from under the failure to timely file is the fact that he was married and he was going to try to get some kind of status by being married. Is that right? Yes. Well, the problem is that the service finds that the petition was withdrawn. And on the withdrawal document, the supposed wife says, because I married him for favor for a friend, he promised me money to marry. I haven't gotten the money, so I'm out of here. I mean, it's a fake marriage. And you're trying to use a fake marriage as an extraordinary circumstance to get him out from under not filing within a year, aren't you? No. With all due respect, Your Honor, respondent did deny that allegation by the service and stated that. Is that what is that what she said? Presumably, yes. In that document, presumably it's it's what she said. It's in the administrative record at page 180. And there's a finding by the service that this was a fraudulent marriage. But she wasn't present in court to testify and subject and be subject to cross-examination. Respondent did deny that allegation as contained in that document. And he did state on the record that marital difficulties essentially led to her withdrawing the petition. You're saying she wasn't telling the truth? That's the respondent's position, yes, that she's mistaken or she is not being truthful in that in that document. In any event, she wasn't present in court to testify and be subject to appropriate cross-examination on that issue. Perhaps the record could have been better developed and respondent be permitted to further testify as to why he felt that those extraordinary circumstances excused his untimely filing. Why is that an extraordinary? Let's assume for the sake of argument that the marriage was a valid argument. Yes. And then something happened. They got in a fight and there was a divorce. Why is that an extraordinary circumstance? It's a fact. But why is it an extraordinary circumstance that would relieve him of filing? I mean, there's nothing that excludes him for filing within a year just because he's married. Well, I believe the regulation in subject regulation addresses two ways, two exceptions that that get around the one year issue. The first is change circumstances which materially affect eligibility for a asylum. And the second is extraordinary circumstances relating to the delay in filing. Yeah. And why is this an extraordinary circumstance? It doesn't prevent him at all from filing for asylum within the year period. Granted, I would submit that this situation falls under the change circumstances subsection of the regulation rather than the extraordinary circumstances. If I remember correctly from my reading of the regulation, I believe extraordinary circumstances make it as cheap as you want, a change circumstance. But still, why should that excuse him from filing? It doesn't prevent him from filing. It doesn't. Theoretically, it doesn't prevent him from filing. Not even theoretically. It just doesn't prevent him from filing. Granted, it was petitioners. He was rolling the dice at the best. And that's not really a reason to get him out from under the one year demand that the law says is in place. If you assume that he entered into a good faith marriage with the I-130 petitioner, his assumption, it might have been mistaken under law, but his assumption was that that constituted change circumstances when the petition was subsequently denied. And the second petition, the outcome was not made aware to him. So at that point... You didn't say I relied on lawyers or anybody, notarios, the people that we usually get, who told me don't worry about it. That's correct, Your Honor. We would submit that his mistaken assumption that this marriage was entered into in good faith and because the I-130 failed subsequently for reasons not of his own doing, that constituted change circumstances. If we punch through and get to the adverse credibility determination, let me ask you to focus on the application dispute. Why isn't the dispute between your client and his former lawyer about what happened enough to justify the adverse credibility finding? That's part of the issue, Your Honor. We would submit that essentially petitioner would seek a remand to the IJ for specification of the basis for the adverse credibility finding. The IJ summarily dismissed his testimony without citing specific cogent reasons as required and did not specify a specific articulable basis for his adverse credibility finding. I believe the only example of inconsistent testimony that the IJ referenced was the year that petitioner joined the National Federation Party. After citing that example, he goes on to summarily state there's a wealth of evidence in the record to show that petitioner is not credible. And he goes even further and says, refers the reader essentially to, or refers rather in the record, he refers in the record to other examples without specifying those examples and stating why petitioner was adversely credible and also refers to government counsel's closing argument, which petitioner submits is not evidence. Well, what he says is, one, I didn't believe the asylum application, and then in his closing statement he says, I didn't write it, my attorney made it up, and his attorney testifies I'd never do that. Why isn't that enough to support an adverse credibility finding? Given the circumstances or the present circumstances of petitioner's former counsel, it would cast doubt on his counsel's testimony in court before the IJ. The IJ seemed to place undue weight on the prior attorney's testimony, believing him categorically over the respondent. Go ahead. Credibility findings are virtually bulletproof. There's a fight between two witnesses, the IJ says he's listened to both, it's contradictory, and he makes a credibility finding in favor of Mr. Seekon. Petitioner would submit How are we supposed to cope with that? Well, petitioner would submit that unfortunately it appears that the IJ just summarily dismissed respondent and his testimony wholesale. Not summarily. He had two witnesses testify on a subject, he listened to both of them, and said, I find this one believable and that one not. How is that summarily? Well, respondent did testify that if he had been presented with a declaration, which presumably did not include additional events that he testified to at the hearing, that he would have made those changes and included those events in his declaration. I believe that was the central issue with the IJ. But more importantly, Your Honor, the IJ did not specify a basis for his adverse credibility finding, with the exception of that one reference that I had mentioned. And he is required, as I understand, to specify on the record each and every basis for the adverse credibility finding and make that connection between why that testimony is fatal to respondent's asylum claim, which was not done. I think we have your argument in hand. Do you want to save some time for rebuttal? Yes, thank you. Okay. We'll hear from the government. Good morning. May it please the Court, Jamie Dowd on behalf of the respondent. Starting first with the one-year bar issue, it's clear here that, as the Court seems to have pointed out, the facts here are in dispute. I would point the Court's attention to the fact that on appeal to the Board, Mr. Kumar's only argument with regard to his late filing was that the law firm that he had engaged failed to complete and pursue an asylum application. He doesn't make any argument regarding a changed circumstance with regard to his marriage or that that constituted an extraordinary circumstance. In fact, during his direct testimony, the only testimony that was elicited with regard to that was on cross-examination. He never provided any affirmative argument with regard to why he failed to file within one year. And then, as I said, on appeal to the Board, he only argued that his prior counsel had failed, this Asherson & Kline law firm that he had engaged, had failed to complete and pursue an asylum application. Now, before this Court, he's claiming that, number one, he had a marriage that he had relied on, would get him some sort of status, and he also makes an argument regarding changed country conditions, none of which he ever argued either before the immigration judge or before the Board. So we would state that that has either not been exhausted or is, or that the facts are in dispute and that the Court lacks jurisdiction under its own precedent to review disputed facts in a one-year finding case. Turning to the credibility finding, I would just point the Court's attention to the fact that number one, he said that he didn't sign it. Later, he said that he did sign it, but that he didn't have time to, I guess, review it. He later said that Mr. Seekon signed it for him. So as the Court pointed out, it's clear that the immigration judge had several bases to rely on to draw the conclusion that Mr. Kumar was not providing credible testimony. Notwithstanding that, notwithstanding the dispute between Mr. Seekon and Mr. Kumar regarding the signing of the declaration, the immigration judge cited the fact that documents Mr. Seekon did submit, including a letter written by Mr. Shankal, which failed to mention incidents to which Mr. Kumar had testified. Another letter that Mr. Kumar submitted by Mr. Verma seemed to include the name of a party that wasn't Mr. Kumar, which seemed to have been scratched out, and Mr. Kumar's name was replaced in the place of this other person's name. So it's clear that the immigration judge relied on many different instances, either omission, inconsistency, lack of detail, to support his adverse credibility findings. So, you know, if the... Why does the discrepancy regarding whether or not he reviewed the asylum application or not go to the heart of his claim? Well, the problem that the immigration judge cited was the fact that there was a very detailed declaration. It was seven or eight pages of declaration. And then he provided testimony which did not, which was in conflict with the declaration in that the declaration didn't include some of these facts that he had testified to during the hearing. So the immigration judge said that that went to the heart of his claim in terms of he was claiming that he participated in union organizing, door-to-door campaigns, things like that, but didn't include that in this seven-page, very lengthy declaration. So, you know, he's relying on his participation in this union organization to support his asylum claim. However, didn't include, you know, very relevant facts in an otherwise detailed declaration. And then the immigration judge found that, you know, that was material. And, you know, that is substantial evidence to support the finding. There's nothing in the record or nothing that has been argued before this Court that, you know, under the standard of review here would compel a contrary conclusion. What did he offer, if anything, to try to impeach the declaration from the woman supposedly his wife, that it was a fraudulent marriage for money? My reading of the record, he didn't offer anything. Like I said, the only testimony that was elicited was on cross-examination when he said that he, you know, was married to this woman, et cetera. But there's nothing to refute her statement. And, in fact, it's clear that... I read it without objection and evidence, I see. My reading of the record was that, I mean, there was no objection on the record by his counsel to that document that she had written. There's also a fraud. You know, it was really just his statement that that wasn't the case, that he had entered into this marriage for appropriate purposes. But there's nothing, you know, other than his own self-serving statement on the record that the marriage was legitimate. Unless the Court has any further questions. Going back to your first point in terms of jurisdiction, I gather you would agree that we do have jurisdiction to decide whether or not a particular allegation constitutes as a matter of law an extraordinary circumstance. For example, the marriage issue of presume true or not, right? Well, under this Court's decision in Ramadan, if the Court considered that a mixed question of law or fact, then the Court would have jurisdiction to review it. However, I would urge that either the issue in this case... We're not really resolving any facts here. I mean, if we hold it as a matter of law, even if we take it as true, that's not sufficient. That's a pure question of law, really, isn't it? It's a mixed question of fact and law. Well, under Ramadan, it would seem to be. However, in this case, it's either an issue that has not been exhausted... I understand that argument. I'm just asking. I just want to make sure I understand your jurisdictional position. Well, actually, our position rests more on the fact that the facts are in dispute here because they were never vetted either, like I said, before the immigration judge or they were never vetted to the board. The arguments that are being made before this Court now have never been vetted. It's not a Ramadan issue. That's an exhaustion issue, right? Exhaustion issue and an issue that the facts are in dispute here, where they were never actually vetted. The government's counsel never had a chance to... No, but if we hold one way or the other in saying this as a matter of law and the allegation isn't an extraordinary circumstance, there's nothing factual about that, is there? Or at least purely factual. In Ramadan, what we're talking about is there's a factual finding about when someone came in the country or not. We're not going to review that. But here we have an argument that this constitutes an extraordinary circumstance, and it seems to me that's a mixed question of fact and law. Would you agree? I do agree that under Ramadan that is a mixed question of fact and law. Okay. Thank you very much. Just two points, if I may, in closing, Your Honor. With respect to the adverse credibility issue, Petitioner submits that the IJA placed significant weight on the fact that events that were testified to at the hearing by a respondent were not included in this application or declaration. And it's also significant to note that his former attorney testified that he had no independent recollection whether or not he sat down with the respondent and reviewed his declaration prior to the hearing. He just said it was his practice. His practice and custom. And the respondent testified that if he had been presented with the declaration, that he would have included or brought to somebody's attention the fact that additional events needed to be included in the declaration. So respondent's testimony is plausible. Just one other point, the IJA did note on the record that there were documents, supporting documents, rather, which seemed to corroborate the respondent's claim. So he didn't dismiss his asylum claim wholesale. He just placed undue weight on certain impermissible factors to base his adverse credibility finding. And we would submit that the record is not clear enough on what specifically the IJA found was inconsistent testimony to warrant an adverse credibility finding. What did your client raise before the IJA with respect to the one-year bar? I'm sorry, the BIA and the IJA. I'm sorry, what did respondent testify to at the hearing? No, what was his argument before the IJA and the BIA concerning relief from the one-year bar? Prior counsel, I believe, there have been three attorneys in this case. I understand, it wasn't you. Former counsel, I do believe, just made brief reference to the fact that he did testify about the marriage before the IJA. I can't recall whether or not there was mention of the 2000 coup in Fiji, which would have also served as a basis for a changed circumstance. But in any event, I believe that there was brief reference, if any, in the appeal to the BIA and to the IJA as to the marriage circumstances. Okay. Thank you very much. The case just heard will be submitted. We'll hear argument then in United States v. Betancourt, and then after this argument, Carly, we'll take a break. And would you then call Kwame, and we'll do the telephone argument first thing after that.
judges: Trott, Thomas, Hogan